UNITED STATES (The ENTERPRISE v.). See Case No. 4,499.

---

## Case No. 15,054.

### UNITED STATES v. ENWRIGHT.

[1 Cal. Law J. 254.]

District Court, N. D. California. Sept. 13, 1862.

MEXICAN LAND GRANTS — IDENTIFICATION OF BOUNDARIES—ERROR IN DECREE OF CONFIRMATION.

[1. In view of the well-known looseness and inaccuracy with which business was transacted in California under the Mexican government, the fact that a decree of concession made by a Mexican governor referred to a certain tree as a live oak, when in fact the only tree reasonably answering the other calls of the description was a white oak, is not sufficient ground for overthrowing a survey based upon such white oak; especially when there is other evidence identifying it as the one referred to in the act of possession.]

[2. In a decree of confirmation an apparent error, arising out of the obscurity of the act of possession, and which consists in assuming that the line taken as the base of the survey runs towards the property of a person mentioned, and may interfere therewith, should not be allowed to control a clear and definite call for that line, as of a given course and direction.]

[Objections by the United States to the official survey of a certain grant situated in Santa Clara county, and now claimed by

James Enwright. The decree of the board affirming the grant was affirmed in Case No. 15,053.]

OPINION OF THE COURT. The official survey in this case has been returned into court under the provisions of the act of 1860. The objections are filed on the part of the United States. By the final decree of confirmation, the land is described as follows: "The land, of which confirmation is made, is situated in the county of Santa Clara, and now occupied by said James Enwright; the said land being in a square of two thousand varas, on each side, and lying adjoining lands known as the 'Mission Lands of the Mission of Santa Clara,' and having, for the side of said premises next to said mission, a line drawn from the first live oak before the place known as 'San Pedro y San Pablo,' and running thence to the south-southeast 2,000 varas, unless the same shall sooner strike the limits of the land known, in 1846, as 'Mariano Castro's land,' and terminating the same at said Castro's limits, if the said line should strike said limits with less than 2,000 varas. The land hereby confirmed being the square having the line above mentioned for the side of the same on the part towards said mission." This description is founded on the record of judicial possession produced in the cause, and to which the decree of the board refers for greater certainty. That record, after stating that a cordel fifty Castillian varas in length was measured, proceeds as follows: "The measurement was commenced by drawing a line of twenty cordels from the first encino (live oak) in front of the place known as 'San Pedro y San Pablo' towards the south-southeast; which tree remained as a dividing boundary to form the square of the extension of the land; and afterwards there were measured 8,000 varas, drawing the first measured line as far as the limits of Mariano Castro's land." The official survey has been made by drawing a line in a direction nearly south-southeast from a tree, adopted as that referred to in the record of possession, to the distance of 2,000 varas, and, on this line, as a base, erecting the square confirmed to the claimant.

It is objected, on the part of the United States: (1) That on applying the description of the grant and the decree to the land and natural objects found upon it, it is so uncertain and incapable of definite application as to make it impracticable to survey any lands whatever. (2) That the tree adopted in the official survey as the point of beginning is not the one intended by the decree. (3) That the survey does not locate the land as described in the decree.

It is unnecessary to consider the first point separately. The examination of the other objections will necessarily involve the question whether or not the description in the act of possession, and in the decree of the lands granted and confirmed to Garcia, is so uncertain, and incapable of application to any ascertainable tract, as to compel us to deprive the claimant of any land whatever.

2. It appears that the tree adopted as the initial point of the survey is a "roble," and not an "encino," as mentioned in the act of possession. The difference between the "roble," or white oak, and the "encino," or live oak, is, undoubtedly, marked and unmistakable. But any one acquainted with the looseness and inaccuracy with which the former inhabitants of this country conducted almost all their business, even official, will have little difficulty in supposing that the act of possession might have mentioned one tree, when the other was, in fact, meant. The record was not drawn up on the ground, and possibly not until some days after the possession was given. The clerk or secretary might easily have forgotten whether the tree from which the measurement was made was a white oak or a live oak. Nor would, in those days, great accuracy on such a point be required, for the measurement was made in the presence of witnesses, and the tree marked as a visible monument. There are in the neighborhood several "encinos," which would satisfy the call of the record. But most of these appear to be in, and to form a part of, the grove known as "San Pedro and San Pablo," whereas the tree mentioned in the record is described as the first tree in front of ("antes") the place called "San Pedro y San Pablo." The encino of the survey is a lone tree of large size and considerable antiquity, standing out in the plain at the distance of about a mile from the grove referred to. But the question is entirely set at rest by the testimony of Salvio Pacheco, if his evidence can be relied on. He positively identifies the "roble" at which the survey begins as the tree mentioned in the record. It is testified by Mr. Beale, United States surveyor general, that Pacheco accompanied him, when viewing the land, to point out the boundaries. That, when at some distance, Pacheco pointed to the oak in question, stating his belief that it was the tree at which the measurement was begun, and that, if so, there was a small arroyo or sanjou at its foot, and that its trunk had marks upon it. On arriving at the tree, it was found to be on the banks of a small "sanjou," and marks, evidently made by an axe, and of considerable antiquity, were found upon it, as described by Pacheco. Mr. Beale adds that he has long known Pacheco, by reputation, as a very honest and worthy man, and that he believes no native Californian has a higher reputation for integrity. Pacheco himself testifies that the tree pointed out by him on this occasion was the identical tree adopted and marked by his brother, Dolores Pacheco, when giving possession. The latter and the other assisting witnesses are dead. Salvio Pacheco himself is seventy years of age. No witness identifies any other tree as that claimed by Garcia, or recognized as his boundary; nor is any other found bearing ancient marks, which might have been made at the time of the judicial possession. The ob-

jection rests entirely on the fact that the tree in question is a white, and not a live, oak. I think it clear that this slight discrepancy is not sufficient to counterbalance the other proofs which identify this tree of the survey with that referred to in the act of possession.

It may be added that the claimant submitted to the board several diagrams of the lands, including more or less of the adjacent country. In all of these the tract was laid down precisely as it has since been surveyed, and in all the oak tree of the survey is represented as the point of beginning. When, therefore, the board, in its description of the land confirmed, mentioned an oak tree as the starting point of the first line, none other than the tree represented on all the maps filed in the case could have been intended, for no other had, up to that time, been by any one referred to. So far, then, as the location adopted by the board can be considered as final and res adjudicata, it is evident that the tree in question must be taken to have been, by the final decree in the case, adopted as the initial point of the eastern boundary of the lands confirmed.

3. The next objection is that the lands are not located in accordance with the decree of confirmation. The record of judicial measurement states, as we have seen, that a line twenty cordels or 1,000 varas in length was run from the oak tree in a south-southeast direction, in order to form the square to be assigned to Garcia. It then states, in substance, that 8,000 varas of land were measured, drawing the first-measured line to the limits of Castro's land. But the land of Castro lies to the west of the point of beginning. A line drawn southeast from that point would never reach it. The board seems not to have been informed as to the situation of Castro's land, for the decree directs the first line to be run in a south-southeast direction 2,000 varas, unless the boundary of Castro be sooner reached. This discrepancy or obscurity in the language of the act of possession has not been explained. It would seem most probable that the line between the tract to be measured and the mission lands of Santa Clara was first established. In that case the record correctly describes it as running south-southeast. It is possible that, having established this line, which was measured, as the record states, to the distance of only 1,000 varas, the officer proceeded to measure a line at right angles to it, and running towards Castro's land; and, in his record of proceedings, he has called this latter his first measured line, regarding the 1,000 vara line as run merely for the purpose of establishing a base. But, whatever be the explanation, there is evidently a discrepancy in the description. Either the first line did not run south-southeast, or it did not run in the direction of Castro's land. As before observed, no question as to the location of the tract seems to have been raised before the board. All the maps—and there are three produced in evidence—represent a tract 2,000 long and 2,000 wide, located as it has since been surveyed. To this tract all the evidence of occupation and cultivation referred, and the board, being of opinion that the proofs established a sufficient cultivation and improvement, confirmed it to the claimant. There can be no doubt as to what land the board intended to confirm. The proof before them, the language of their opinion, and the terms of the decree are conclusive. The decree declares that the line drawn from the oak tree south-southeast is to be "the side of said premises next to the mission;" "the land hereby confirmed being the square having the line above mentioned for the side of the same on the part towards said mission." In their opinion, after stating that the act of possession established the starting point, and the direction of the line first run, with great distinctness, the board say: "This testimony establishes the location of the land as it was evidently intended to be on the southwest side of the line thus run, embracing the land occupied at the time of the judicial survey by the grantee, and located so as to adjoin the mission lands, and also the lands of Mariano Castro." We have thus unmistakably indicated the direction and length of a line which is to form the base of a square to be erected upon it, and this line is to be on the side of the tract next the mission, and the square is to be formed to the southwest of it.

The survey is in precise accordance with this description. The only call in the decree which it fails to satisfy is that which contemplates that the line drawn to the south-southeast shall run in the direction of the lands of Castro. But this, as we have seen, is impossible. The board were evidently under the impression that the line described in the decree would run towards Castro's land; and such would be the natural inference from the obscure language of the act of possession. But this error cannot control the clear and definite call for a line of a given course and distance, and the distinct location of the square on the southwest of this line as a base.

It is to be observed, in addition, that the decree does not direct the line to be run to the land of Castro. Its terms are, "running thence" (i. e. from the oak) "to the south-southeast 2,000 varas, unless the same shall sooner strike the limits of the land known, in 1846, as 'Mariano Castro's land,' and terminating the same at said Castro's limits, if the said line should strike said limits with less than 2,000 varas." The line of the survey is in literal accordance with this description. It runs from the point named, in the prescribed direction, to the distance mentioned, and it does not strike the limits of the land known, in 1846, as that of Mariano Castro. The fact that it could not do so, no matter how far produced, proves that the board was under an erroneous impression in that particular; but it cannot, on that account, be said that the calls of the decree have not been observed. There is, therefore, no foundation for the ob-

jection that "the survey does not locate the land as it is described in the decree of confirmation."

But, inasmuch as the decree was evidently founded on the act of possession, and refers to that document for further description, it might still be open to inquire whether the land described in the decree of confirmation is, in fact, that whereof possession was given. On recurring to the act of possession, we find, as before observed, that its language is obscure. A possible explanation of the seeming discrepancy has been suggested. It would seem still, however inaccurate may have been the notions of the alcalde and his assistants as to the courses by compass of the lines run by him, they could not have failed to know that the mission lands lay to the east, and Castro's land to the west, of the tract they were to measure. When, therefore, the record describes the first line as drawn to southsoutheast, it is almost impossible that they should have intended it to run to Castro's land, which lay to the west and northwest. So gross a blunder can hardly be supposed. The testimony of Pacheco, the only surviving assisting witness, confirms. He identifies positively the line first run.

Some stress is laid in the brief filed on the part of the United States on the fact that Pacheco, in his deposition, says the first line was run "more or less south or southwest,— we called it southerly." The next line, he says, was run "northeast or northwest. We knew nothing about the points of the compass, except north, south, east, and west." The witness here exhibits the confusion of ideas as to courses by compass, so commonly found among his countrymen. But, though unable to describe them, no doubt can be entertained as to what lines he referred to. He has pointed them out to the surveyor on the ground as those actually run by the judicial officer; and in his deposition, though confused and erroneous as to points of compass, he states one fact about which he could not have been mistaken, and which shows that the line from the oak tree must have been run as described in the act of possession. He states that it was run "from the roble towards Santa Clara," i. e. about southeast. He also says that the lands of Mariano Castro lay to the northwest of the roble. They are, in fact, situated to the north and west of that tree. It is plain, therefore, that it could not have been intended by the alcalde that the first line should run towards the lands of Castro. The lines pointed out by Pacheco to the surveyor general are those of the official survey. They, in all respects, conform to those delineated on the maps presented by the claimant to the board, and they correspond with the description of the land confirmed contained in the decree.

The evidence of occupation and cultivation, on which the board confirmed the inchoate title, presented by the claimant, referred to the lands embraced within these lines. They are situated in the bajio, or low grounds, as mentioned in the act of possession; whereas, if located as suggested on the part of the United States, they would include but a small portion of the bajio, and would, to a considerable extent, be located in the grove called "San Pedro y San Pablo." The only circumstance which tends, in any degree, to throw doubts on the question of location is the description in the second deed from Garcia to the claimant. In this deed the lines are described as commencing at "San Pedro and San Pablo," and not at a tree in front of that place, and running "thence southwest 2,000 varas, thence northwest 2,000 varas, thence northeast 2,000 varas, thence to the point of beginning." Assuming that, by the words "San Pedro y San Pablo," the tree in front of that place was intended, it is evident that the tract described is to the northwest of the tract surveyed. I am unable to account for this description, except by supposing a clerical error in stating the course of one of the lines. The tract called for in the deed in no respect conforms to that described in the act of possession, except that the first line is run towards Mariano Castro's limits, and the square is formed by running lines perpendicular to it, towards the northwest. At least a third of the land included within these lines is embraced within the official survey of Mariano Castro's land, contrary to the express provision of the act of possession and of the decree, and contrary to the evident understanding of every witness who has spoken of the location and limits of the tract claimed by Garcia. Not only the terms of the act of possession, but the positive testimony of the only surviving witness to that proceeding, show that the tract was not located as described in the deed; and we are without the slightest evidence to justify us in assigning to the claimant, even if he desired it, the tract embraced within the arbitrary lines mentioned in his conveyance. All the right and title of Garcia to the land had previously been acquired by Enwright under a deed which described it, in general terms, as the piece of farming land, 2,000 varas square, granted on the 6th January, 1845, whereof judicial possession was given on the 18th February, 1846, etc. A subsequent conveyance, made one year after the first, contains the erroneous description which has been noticed.

It is plain that no claim for the land described in the second deed was presented to the board. The petition describes the land as it has since been surveyed, and the plat annexed to it, and the other maps produced in evidence delineate the same tract. It would seem, therefore, that the misdescription must be the result of a clerical error. But, whether it be so or not, the fact that Garcia has, either intentionally or by mistake, conveyed a tract different from that granted him, and whereof he received judicial possession, affords no reason why the court should change its location as established by the act of pos-

session; more especially when that location has been fixed by the decree of the board, which has become final by the consent of the United States.

For these reasons, I think that the official survey should be approved.